Lawrence C. Weiner, Esq.
Richard I. Simon, Esq.
MANDELBAUM SALSBURG, P.C.
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 736-4600
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DS-CONCEPT TRADE INVEST LLC,<br><br>Plaintiff,<br><br>-v-<br><br>ATALANTA CORPORATION, GORMET FOOD IMPORTS LTD and GOURMET FOOD IMPORTS, LLC,<br><br>Defendants. | Civil Action No. 16-429 (SRC)(CLW)<br><br>AMENDED COMPLAINT |

Plaintiff DS-Concept Trade Invest LLC, a Delaware limited liability company having its principal place of business at 650 Fifth Avenue, New York, New York, by and through its attorneys, Mandelbaum Salsburg, P.C., by way of Complaint against Defendants Atalanta Corporation, Gourmet Food Imports LTD and Gourmet Food Imports, LLC says:

### The Parties

1.   At all relevant times, Plaintiff DS-Concept Trade Invest LLC ("DS-Concept")[1] is and has been a Delaware limited liability company with its principal place of business at 650 Fifth Avenue, New York, New York. At all relevant times, DS-Concept is and has been in the business

---

[1] The definition "DS-Concept" includes DS-Concept Trade Invest LLC's servicer and funding entities, DS-Concept Factoring, Inc., DS-Concept Special Finance LLC and DS-Concept ITF LLC.

905076

of, among other things, factoring accounts receivables due and owing to its clients by third parties, all upon terms and conditions set forth in written agreements with such clients.

2. At all relevant times and upon information and belief, Atalanta Corporation ("Atalanta") is and has been a New York corporation authorized to do business in New Jersey with its principal place of business at 1 Atalanta Plaza, Elizabeth, New Jersey. At all relevant times and upon information and belief, Atalanta is a large and established food importer specializing in cheese, charcuterie, deli meat, grocery and seafood products from around the world.

3. At all relevant times and upon information and belief, Defendant Gormet Food Imports LTD ("Gormet LTD"), is and has been (i) a registered Bulgarian trade company with ID No. 202667037 with its principal place of business at Poruchik Hristo Toprakchiev Str., No. 10, 1504 Sofia, Bulgaria and (ii) an exporter and distributor of food and beverage products.

4. At all relevant times and upon information and belief, Defendant Gourmet Food Imports, LLC ("Gourmet LLC") is and has been (i) a Nevada limited liability company authorized to do business in California with its principal place of business at 5039 Commercial Circle, Unit F, Concord, CA and (ii) an importer and distributor of food and beverage products and (iii) an affiliate of Gormet LTD.

5. Gormet LTD and Gourmet LLC shall hereinafter at times be collectively referred to as "Gourmet".

### Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), as there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court has jurisdiction over Defendants as they have conducted business in the State of New Jersey directly related to the claims at issue in this case.

8. The venue is based in this district as Atalanta has its principal place of business in New Jersey.

## Facts Common to All Counts

9. On or about July 29, 2013, Gormet LTD entered into an Account Receivable Purchasing Agreement with DS-Concept (the "Factoring Agreement I"), by which DS-Concept agreed to purchase and Gormet LTD agreed to sell DS-Concept all of its account receivables upon those terms set forth more particularly in the Factoring Agreement I. (A copy of the Factoring Agreement I is annexed hereto as Exhibit A.)

10. On or about July 29, 2013, Gourmet LLC signed a Guaranty wherein Gourmet LLC guaranteed payment and performance of all of Gormet LTD's obligations to DS-Concept under the Factoring Agreement I. (A copy of the Guaranty is annexed hereto as Exhibit B.)

11. The Guaranty also provides that Gourmet LLC is liable to DS-Concept for attorneys' fees and costs to the extent Gormet LTD does not satisfy its obligations to DS-Concept pursuant to the Factoring Agreement I.

12. Under Factoring Agreement I, Gormet LTD made certain warranties and representations and assumed certain obligations and other undertakings to DS-Concept, including but not limited to the following:

    A. All receivables were, at the time of assignment, <u>bona fide</u> and existing obligations of Gormet LTD's customers; and

    B. All receivables were owed and owing to Gormet LTD without dispute.

13. On or about August 5, 2013, Gourmet LLC entered into an Account Receivable and Purchase Agreement with DS-Concept (the Factoring Agreement II"), by which DS-Concept agreed to purchase and Gourmet LLC agreed to sell DS-Concept all of its account receivables, upon those terms set forth more particularly in the Factoring Agreement II. (A copy of the Factoring Agreement II is annexed hereto as Exhibit C.)

14. Pursuant to the Guaranty and the relevant provisions of the Factoring Agreements, including, but not limited to, ¶¶11 and 14 thereof, the Guaranty is secured by Gourmet LLC's receivables.

15. Other than the Seller's name, the provisions and terms of Factoring Agreement I and Factoring Agreement II are identical.

16. At all relevant times, including from 2013 through in or about June, 2016, Atalanta purchased cheese and other food products from Gourmet.

17. On or about August 6, 2013, Atalanta was notified that Gormet LTD had entered into the Factoring Agreement I with DS-Concept and that all of its accounts receivables have been assigned to DS-Concept (the "Notice of Assignment I"). (A copy of the Notice of Assignment I is annexed hereto as Exhibit D.)

18. The Notice of Assignment I also instructs: (a) that Atalanta shall pay DS-Concept for any and all Gormet LTD. invoices; (b) that any payment instructions can only be altered by DS-Concept's servicer, DS-Concept Factoring Inc. and (c) that Atalanta must still pay DS-Concept even if Gormet LTD's invoices direct payment elsewhere.

19. The Notice of Assignment I is a properly authenticated notice pursuant to UCC §9-406.

4

20. On or about August 13, 2013, Mark Mazzella ("Mazzella"), Senior Product Manager, Cheese Department at Atalanta, acknowledged that Atalanta had received the Notice of Assignment I and confirmed that all payments of Gormet LTD's invoices will be paid to DS-Concept.

21. On or about August 6, 2013, Atalanta was notified that Gourmet LLC had entered into the Factoring Agreement II with DS-Concept and that all of its accounts receivable have been assigned to DS-Concept (the "Notice of Assignment II"). (A copy of the Notice of Assignment II is annexed hereto as Exhibit E.)

22. The Notice of Assignment II also instructs: (a) that Atalanta shall pay DS-Concept for any and all Gourmet LLC invoices; (b) that any payment instructions can only be altered by DS-Concept's servicer, DS-Concept Factoring Inc. and (c) that Atalanta must still pay DS-Concept even if Gourmet LLC's invoices direct payment elsewhere.

23. The Notice of Assignment II is a properly authenticated notice pursuant to UCC §9-406.

24. On or about August 13, 2013, Mazzella acknowledged that Atalanta had received the Notice of Assignment II and confirmed that all payments of Gourmet LLC's invoices will be paid to DS-Concept.

25. From August of 2013 through the summer of 2015, DS-Concept requested Atalanta's verification that the referenced invoices for goods sold and associated Bills of Lading were valid, the amounts are accurate and confirmation that payment thereon would be made to DS-Concept. In the ordinary course of business, Atalanta sent confirmatory emails to DS-Concept verifying that each Gourmet invoice was *bona fide* and due and owing and pay DS-Concept for such invoices.

26. During the Summer of 2015, the following invoices relating to Atalanta's purchase of pecorino cheese from Gourmet were sent to Atalanta for verification and confirmation:

| Invoice No. | Date | Amount |
|---|---|---|
| **59104** | **June 16, 2015** | **$ 189,817.63** |
| **59105** | **June 16, 2015** | **$ 189,358.02** |
| **59106** | **June 16, 2015** | **$ 189,435.24** |
| 59107 | June 23, 2015 | $ 189,331.45 |
| 59108 | June 23, 2015 | $ 189,290.23 |
| 59109 | June 23, 2015 | $ 189,370.15 |
| 59112 | July 16, 2015 | $ 189,961.59 |
| 59113 | July 16, 2015 | $ 189,839.30 |
| 59114 | July 16, 2015 | $ 190,098.61 |
| 59117 | July 29, 2015 | $ 185,300.96 |
| 59118 | July 29, 2015 | $ 184,817.95 |
| 59119 | July 29, 2015 | $ 185,059.30 |
| 59120 | August 3, 2015 | $ 185,059.30 |
| 59121 | August 3, 2015 | $ 185,059.30 |
| | **Total** | **$2,631,799.03** |

27. Consistent with its course of conduct over the past 2 years and the terms of the Factoring Agreements and Notices of Assignment, as to each and every invoice referenced above (the "14 Invoices"), Atalanta sent a confirmatory e-mail to DS-Concept verifying each of the 14 Invoices and that payment will be made thereon.

28. On June 17, 2015, Sadina Atchison ("Atchison"), an Atalanta employee with the requisite authority, or apparent authority, responded to DS-Concept's request for confirmation and verification of invoices numbered. 59104, 59105 and 59106 (the "3 Invoices") with a confirmatory

6

email to DS-Concept verifying the 3 Invoices and confirming that Atalanta will make payment thereon to DS-Concept. (A copy of the confirming emails, with attachments, is annexed hereto as Exhibit F.)

29. To date, Atalanta has never paid DS-Concept for the 3 Invoices.

30. From June 24, 2015 to August 3, 2015, Atalanta, through Atchison or Mazzella, also confirmed and verified each and all invoices numbered 59107, 59108, 59109, 59112, 59113, 59114, 59117, 59118, 59118, 59120 and 59121 (the "11 Invoices"). (A copy of the confirming emails, with attachments, is annexed hereto as Exhibit G.)

31. Atalanta had not paid DS-Concept on the 11 Invoices, or any of them, through the first 2 weeks of November of 2015.

32. On or about November 16, 2015, and after exchanges of e-mails and/or telephone conversations between DS-Concept employees and Mazzella, Mazzella, once again, reconfirmed Atalanta's obligation to pay DS-Concept for each and all of the 11 Invoices, requested extended payment terms due to the resale market conditions and agreed to make payment pursuant to an extended payment plan. Under the extended payment plan presented by Atalanta, Atalanta agreed to pay the first installment under the plan by November 30, 2015 in the amount of $567,991.83. (A copy of relevant e-mails are annexed hereto as Exhibit H.)

33. Atalanta did not make such payment by November 30, 2015, and to date, has not made any other payment to DS-Concept for or on account of the 11 Invoices.

34. After such date, Atalanta made further requests to extend payment terms.

35. The pecorino cheese that is the subject of the 11 Invoices was stored and maintained in cold storage in San Francisco, CA.

36. During the course of 2016 and into calendar year 2017, all of the stored pecorino cheese was sold to third-parties and the net proceeds of such sales were applied as a credit against Gourmet's account balance upon collection of receipt.

## FIRST COUNT
### (Breach of Contract – Atalanta)

37. DS-Concept repeats and realleges the allegations contained above as if set forth at length herein.

38. There is due and owing to DS-Concept from Atalanta, the account debtor, pursuant to the Factor Agreements, the Notices of Assignment and/or Atalanta's agreement and acknowledgement to make payment on the 14 Invoices, the sum of $2,631,799.03.

39. Despite acknowledging and agreeing that all payments under the 14 Invoices would be made by Atalanta to DS-Concept, and despite confirming the amounts owed to DS-Concept under the 14 Invoices, Atalanta has failed to pay the sums due and owing to DS-Concept.

40. Atalanta's actions are in breach of its contractual obligations owed to DS-Concept.

41. Based upon Atalanta's breach, DS-Concept has been damaged in the amount of $2,631,799.03.

**WHEREFORE**, DS-Concept demands judgment against Atalanta in the amount of $2,631,799.03, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest, and such other relief as the Court may deem just and equitable.

## SECOND COUNT
### (Quantum Meruit – Atalanta)

42. DS-Concept repeats and realleges the allegations contained above as if set forth at length herein.

43. Atalanta purchased the products from Gormet LTD and/or Gourmet LLC identified in the 14 Invoices.

44. Under applicable Bills of Lading ("B/L"), each of which consigns legal title to the products identified in the 14 Invoices solely to Atalanta, Atalanta was the owner of the products.

45. Moreover, Atalanta never rejected, all or any of the cheese set forth in the 14 Invoices and identified in the corresponding B/L.

46. Despite acknowledging that the cheese was provided without deficiency or dispute and that all payments for the 14 Invoices would, without offset, deductions, contributions or chargebacks, be made, Atalanta has failed and refused to pay the value therefore.

47. As a result of Atalanta's actions, DS-Concept has been damaged in an amount of at least $2,631,799.03.

**WHEREFORE**, DS-Concept demands judgment against Atalanta in the amount of $2,631,799.03, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest and such other relief that the Court may deem just and equitable.

## THIRD COUNT
### (Book Account Balance - Atalanta)

48. DS-Concept repeats and realleges the allegations contained above as if set forth at length herein.

49. DS-Concept has on its books of account the purchase of the 14 Invoices from Gourmet in the sum of $2,631,799.03.

9

50. Atalanta has failed to pay this book account balance, despite confirming and verifying its accuracy to DS-Concept.

51. As a result of Atalanta's actions, DS-Concept has been damaged in the amount of $2,631,799.03.

**WHEREFORE**, DS-Concept demands judgment against Atalanta in the amount of $2,631,799.03, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest, and such other relief that the Court may deem just and equitable.

### FOURTH COUNT
### (Promissory Estoppel - Atalanta)

52. DS-Concept repeats and realleges the allegations contained above as if set forth at length herein.

53. Atalanta represented to DS-Concept that each of the 14 Invoices was approved, correct and would be paid without offset, deductions, chargeback or dispute.

54. Atalanta made these representations with the expectation that DS-Concept would rely upon them, in advancing monies to Gourmet on account of each and all of the 14 Invoices.

55. DS-Concept reasonably relied upon Atalanta's representations, and made advances to Gourmet on account of each and all of the 14 Invoices.

56. Despite Atalanta's representations, Atalanta did not pay and has not paid any monies on account of any or all of the 14 Invoices as it represented it would and continues to refuse to make payment thereon.

57. Atalanta is estopped from denying an enforceable promise to pay to DS-Concept the full invoice on each of the 14 Invoices.

58. As a result of Defendant's actions, DS-Concept has been damaged in the amount of $2,631,799.03.

WHEREFORE, DS-Concept demands judgment against Atalanta in the amount of $2,631,799.03, together with consequential damages, attorneys' fees, costs of suit and such other relief that the Court may deem just and equitable.

## FIFTH COUNT
### (Equitable Estoppel - Atalanta)

59. DS-Concept repeats and realleges the allegations contained above as if set forth at length herein.

60. Atalanta represented to DS-Concept that each of the 14 Invoices was approved, correct and would be paid without offset, deductions, chargeback or dispute.

61. Atalanta made these representations with the expectation that DS-Concept would rely upon them in advancing monies to Gourmet on account of each and all of the 14 Invoices.

62. DS-Concept reasonably relied upon Atalanta's representations, and made advances to Gourmet on account of each and all of the 14 Invoices.

63. Despite Atalanta's representations, Atalanta did not pay and has not paid any monies on account of any or all of the 14 Invoices as it represented it would and continues to refuse to make payment thereon.

64. Atalanta is equitably estopped from denying an enforceable promise to pay to DS-Concept the full invoice on each of the 14 Invoices.

65. As a result of Defendant's actions, DS-Concept has been damaged in the amount of $2,631,799.03.

WHEREFORE, DS-Concept demands judgment against Atalanta in the amount of $2,631,799.03, together with consequential damages, attorneys' fees, costs of suit and such other relief that the Court may deem just and equitable.

## SIXTH COUNT
### (Liability For Direct Payments Made to Gourmet - Atalanta)

66. DS-Concept repeats and realleges the allegations contained above as if set forth at length herein.

67. Atalanta received the Notices of Assignment from Gourmet that were compliant with UCC.9-406 and, acknowledged and verified receipt of same.

68. Atalanta was required to make any and all payments for Gourmet invoices to DS-Concept in accordance with the Notices of Assignment. Pursuant to §9-406 of the UCC, Atalanta's payment of Gourmet invoices to Gourmet does not discharge its obligation to make payment thereon to DS-Concept.

69. To the extent that Atalanta made payment of any Gourmet invoices directly to Gourmet, Atalanta did not discharge such debts and still owes DS-Concept payment for such invoices.

70. After the filing of its Complaint, Atlanta disclosed in its Amended Crossclaim and DS-Concept first learned that Atalanta, in disregard of the Notices of Assignment, had paid Gourmet directly for invoices that were assigned to DS-Concept.

71. Atalanta admits to these direct payments in its Amended Crossclaim against Gourmet, jointly and severally, which is annexed hereto as Exhibit I.

72. On or about April 12, 2015, Atalanta received from Gourmet invoice no. 50150 in the amount of $62,000 and paid this invoice directly to Gourmet. (Id. at ¶89)

73. Sometime in September or October of 2015, Atalanta paid Gourmet directly for invoice no. 50151 in the amount of $48,364.84. (Id. at ¶¶92 & 93 and Exhibit D thereto)

74. From September to December 2015, Atalanta paid Gourmet directly on seven invoices totaling $443,041.39. (Id. at ¶94)

75. In late 2015/early 2016, Gourmet submitted three invoices to Atalanta totaling $193,162.81 and Atalanta made payment directly to Gourmet for such invoices. (Id at. ¶95)

76. In or about April of 2014, Atalanta made a payment to Gourmet in the amount of $541,200.00 representing an advance against purchases to be made by Atalanta, and the advance was debited against future Atalanta purchases of product from Gourmet. (Id. at ¶¶ 98 & 99)

77. In or about April of 2014 and from April 2014 through March 2016, Atalanta paid Gourmet directly on invoices and on accounts (as defined in UCC.9-102(2) the amount of $1,287,769.04. ("Misdirected Payments")

78. Pursuant to the Notices of Assignment and UCC §9-406, Atalanta's payment of the Misdirected Payments to Gourmet does not discharge Atalanta's obligation to make payment to DS-Concept on the account and it is still obligated to pay DS-Concept for these accounts.

79. To the extent it is determined that Atalanta made any other direct payments to Gourmet on accounts, Atalanta remains obligated for such payments to DS-Concept.

**WHEREFORE**, DS-Concept demands judgment against Atalanta for $1,287,769.04, additional compensatory damages in the amount of all other payments that Atalanta made to Gourmet for accounts that were assigned to DS-Concepts, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest, and such other relief that the Court may deem just and equitable.

### SEVENTH COUNT
### (Liability For Withheld Payments – Atalanta)

80. DS-Concept repeats and realleges the allegations contained above as if same were set forth herein at length.

81. After the filing of DS-Concept's initial Complaint, Atalanta purchased and received cheese from Gourmet.

82. On or about February 12, 2016, Gourmet issued an invoice to Atalanta for cheese product totaling $56,028.75.

83. On or about February 22, 2016, Gourmet issued an invoice to Atalanta for cheese product totaling $83,792.51.

84. On or about March 28, 2016, Gourmet issued an invoice to Atalanta for cheese product totaling $49,650.00. (the invoices referenced in Paragraphs 71 through 73 are collectively referred to as the ("2016 Invoices")

85. These 2016 Invoices are in the total amount of $189,471.26.

86. Atalanta accepted all the cheese referenced in the 2016 Invoices.

87. In total disregard of (i) the Notices of Assignment and UCC §9-406, or, alternatively (ii) DS-Concept's right and remedies in its capacity as a secured creditor after Gourmet's default, Atalanta has failed and refused DS-Concept's demand for payment of the 2016 Invoices.

88. Atalanta has also not paid the 2016 Invoices to Gourmet, or anyone else.

89. As a result of Atalanta's refusal to pay DS-Concept the $189,471.26, DS-Concept has been and will continue to be damaged and, consequently, Atalanta has been unjustly enriched.

**WHEREFORE**, DS-Concept demands judgment against Atalanta for $189,471.26, additional compensatory damages for all other amounts Atalanta has failed and/or refused to pay DS-Concept on any and all other Gourmet accounts, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest, and such other relief that the Court may deem just and equitable.

## EIGHTH COUNT
## (Breach of Contract – Gormet LTD)

90. DS-Concept repeats and realleges the allegations contained above as if same were set forth herein at length.

91. There is currently due and owing to DS-Concept from Gormet LTD the amount of $1,490,958.29 as of March 31, 2017 exclusive of fees, charges, attorney's fees and accruing unpaid interest not yet posted.

92. Demand for payment has been made by DS-Concept, yet Gormet LTD has failed and refused to pay DS-Concept.

93. Gormet LTD is in breach of the Factoring Agreement I.

94. As a result of such breach, DS-Concept has been damaged.

95. Pursuant to the Factoring Agreement I, Gormet LTD is also liable for late fees, interest, attorneys' fees and costs.

**WHEREFORE**, DS-Concept demands judgment against Gormet LTD in the amount of at least $1,490,958.29, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest and such other relief that the Court may deem just and equitable.

## NINTH COUNT
## (Breach of Contract – Gourmet LLC)

96. DS-Concept repeats and realleges the allegations contained above as if same were set forth herein at length.

97. There is currently due and owing to DS-Concept from Gourmet LLC the amount of $1,490,958.29 as of March 31, 2017 exclusive of fees, charges, attorney's fees and accruing unpaid interest not yet posted.

98. Demand for payment has been made by DS-Concept, yet Gourmet LLC has failed and refused to make payment.

99. Gourmet LLC is in breach of the Factoring Agreement II.

100. As a result of the breach, DS-Concept has been damaged.

101. Pursuant to the Factoring Agreement II, Gourmet LLC is also liable for late fees, interest, attorneys' fees and costs.

**WHEREFORE**, DS-Concept demands judgment against Gourmet LLC in the amount of at least $1,490,958.29, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest and such other relief that the Court may deem just and equitable.

## TENTH COUNT
## (BREACH OF GUARANTY – GOURMET LLC)

102. DS-Concept repeats and realleges the allegations set forth above as if same were set forth at length herein.

103. On or about July 29, 2013, Gourmet LLC executed a Guaranty, guaranteeing the debts, obligations and performance required by Gormet LTD owed to DS-Concept pursuant to the Factoring Agreement I.

104. DS-Concept relied on the Guaranty in entering into the Factoring Agreement I.

105. Pursuant to the Guaranty, Gourmet LLC is liable to DS-Concept for Gormet LTD's breach of the Factoring Agreement I and its failure to pay the amount of at least $1,490,958.29 currently due and owing exclusive of fees, charges, attorney's fees and accruing unpaid interest not yet posted. The amount due from Gourmet LLC under the Guaranty is fully secured by the pecorino cheese being maintained by Gourmet LLC in cold storage in San Francisco, California under a consensual security interest granted to DS-Concept by Gourmet in the Factoring Agreements. The content of the cold storage warehouses is also in the possession of Gourmet LLC

pursuant to the requirements under the Factoring Agreement II that it be held in trust for DS-Concept.

106. Based on Gourmet LLC's breach of the Guaranty, DS-Concept has been damaged.

107. Pursuant to the Guaranty, Gourmet LLC is also liable for DS-Concept's attorneys' fees, interest and costs.

**WHEREFORE**, DS-Concept demands judgment against Gourmet LCC in the amount of at least $1,490,958.29, together with consequential damages, attorneys' fees, costs of suit, pre-judgment interest and such other relief that the Court may deem just and equitable.

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of any proceeding pending in any court or of any pending arbitration or administrative proceeding, other than actions commenced by DS-Concept and Gourmet LLC in the State of California relating to certain cheese that was and still is currently being maintained in a cold storage in San Francisco, CA and damages relating to same.

                                            MANDELBAUM SALSBURG, P.C.
                                            Attorneys for Plaintiff

                                        By:           /s/
                                            LAWRENCE C. WEINER, ESQ.
                                            RICHARD I. SIMON, ESQ.

Dated: March 31, 2017