**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DS-CONCEPT TRADE INVEST LLC, : | **Civil Action No. 16-429 (SRC)** |
| : | |
| Plaintiff, : | |
| : | **OPINION & ORDER** |
| v.  : | |
| : | |
| ATALANTA CORPORATION et al., : | |
| : | |
| Defendants. : | |
| : | |

**CHESLER, District Judge**

This matter comes before the Court on the motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Plaintiff DS-Concept Trade Invest LLC ("DS"). For the reasons stated below, the motion will be denied.

The Amended Complaint alleges the following facts. DS is in the business of factoring accounts receivable. In the summer of 2013, DS executed a factoring agreement with Defendant Gormet Food Imports LTD ("Gormet LTD"), by which DS agreed to purchase and Gormet LTD agreed to sell its account receivables, as well as a similar agreement with Defendant Gourmet Food Imports, LLC ("Gourmet LLC"). Although Gormet LTD and Gourmet LLC are distinct business entities, in briefing this motion, the parties have uniformly treated them collectively as a single entity for purposes of this motion, and this Court will follow suit, using "GFI" to represent the Gourmet/Gormet entities, separately and together. Defendant Atalanta Corporation ("Atalanta" or "AT") purchased goods from GFI. AT was formally notified at that time that GFI had assigned AT's accounts receivable to DS. In brief, the Amended Complaint alleges that Atalanta has not paid all its obligations to Plaintiff, and that AT

has breached its obligations to Plaintiff under the relevant purchase agreements as well as § 9-406 of the Uniform Commercial Code ("UCC"); Plaintiff contends that it is owed approximately $2.6 million.

DS-Concept's Amended Complaint asserts seven causes of action, Counts One through Seven, against Atalanta.   Count One (breach of contract), Count Two (Quantum Meruit), Count Three (Book Account), Count Four (Promissory Estoppel), and Count Five (Equitable Estoppel) all seek recovery totaling roughly $2.6 million on 11 "Unpaid Invoices" for Pecorino cheese that Atalanta ordered from GFI[1] and verified to DS-Concept.   Count Six (Breach of Contract/U.C.C. 9-406(a)) seeks recovery on 11 "Direct Payment" Invoices and a payment of approximately $541,000, totaling roughly $1.3 million.   Count Seven (Breach of Contract/U.C.C. 9-406(a)) seeks recovery on three invoices from 2016, totaling $189,471.26.   DS-Concept now moves for summary judgment on Counts One through Seven, for a total recovery of $2,570,554.83, after applying the appropriate credit to Atalanta's liability on the 11 Unpaid Invoices.

DS bears the burden of proof at trial on Counts One through Seven.   To succeed on a motion for summary judgment, then, under Third Circuit law: "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."   In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real

---

[1] DS-Concept's Amended Complaint also seeks payment from Atalanta on GFI Invoice Nos. 59104-106, contending that Atalanta is liable for payment on these invoices, pursuant to U.C.C. § 9-406(a).   However, DS-Concept is not seeking summary judgment on these invoices in this motion.

Prop., 941 F.2d 1428, 1438 (11th Cir. 1991)).

### I. Count Six: the "Direct Payment" invoices and the $541K Payment

DS moves for summary judgment on Count Six, which asserts that "Atalanta was required to make any and all payments for Gourmet Invoices to DS-Concept in accordance with the Notices of Assignment." (Am. Compl. ℙ 68.) The Amended Complaint specifically identifies two payments by Gourmet invoice number (50150 and 50151, Am. Compl. ℙℙ 72, 73), and asserts that ten other invoices were paid directly (Am. Compl. ℙℙ 74, 75). Count Six of the Amended Complaint also references an advance payment of $541,200, but does not mention any invoice (Am. Compl. ℙ 76), and includes this in a total that "Atalanta paid Gourmet directly on invoices and on accounts" of $1,287,769.04. (Am. Compl. ℙ 77.)

Plaintiff's moving brief introduces the arguments as to Count Six as follows:

### II. DS-Concept is entitled to summary judgment on its breach of contract and U.C.C. 9-406(a) claims as to the 11 Direct Payment Invoices (Count Six).

Breach of contract principles and Article 9 of the U.C.C. govern DS-Concept's claims for recovery on the 11 Direct Payment Invoices, for which Atalanta directly paid Gourmet in complete disregard of the Notices.

(Pl.'s MSJ Br. 19.)[2] The brief identifies the 11 Direct Payment invoices by GFI invoice number: 50150-52, 50155-60, 50164, and 50165. Plaintiff's argument for summary judgment, in a nutshell, is based on these propositions: 1) GFI assigned all its accounts receivable to DS, and DS sent "Notices of Assignment" (the "Notices") to AT; 2) on May 18, 2015, DS changed the payment instructions in writing (the "Change"); 3) "Atalanta directly paid Gourmet in complete disregard of the Notices" for the 11 Direct Payment Invoices (Pl.'s MSJ Br. 19); and 4)

---

[2] While several claims in the Amended Complaint expressly specify a claim for "breach of contract," Count Six does not use that phrase.

DS is entitled to these payments, pursuant to U.C.C. § 9-406(a), which states: "After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor."   Furthermore, DS moves for summary judgment on AT's affirmative defense of waiver, arguing that AT has no legal or factual basis for this defense.

There is no dispute about the content of the Notices of Assignment, which were issued in the form of letters from each GFI entity to AT, and stated, in relevant part:

> Under our Factoring arrangement, our accounts receivable on orders place [*sic*] by you are sold and assigned by us to DS-Concept Trade Invest LLC and, ultimately, DS-Concept Special Finance LLC, as 100% owner and sole payee on all invoices. Payment instructions for all of our invoices to you are as follows:
>
> [instructions for payment to DS-Concept Special Finance LLC]
>
> These payment instructions can now only be altered or verified in writing solely by the servicer, DS-Concept Factoring, Inc. . . . You will receive invoices conforming to these payment instructions.   Even if our invoices direct payment elsewhere, you are responsible for following the payment instructions in this letter.

(Weiner Dec. Exs. A, B.)

In opposition, AT does not dispute the legal effect of the Notices, pursuant to U.C.C. § 9-406(a).   Instead, AT asserts the affirmative defense of waiver, that DS waived its right to demand payment in accordance with the procedure set forth in the Notices, on two grounds: 1) DS acquiesced to AT's direct payment to GFI of the $541K Payment;[3] and 2) the Change constitutes an abandonment of the procedure in the Notices, and an abandonment of the Notices

---

[3] The parties dispute whether this payment is properly termed "Trade Financing" or an "Advance Payment," as well as whether it was a payment of $541,200 or $541,000.   For convenience, the Court will refer to this as the "$541K Payment," which implies no resolution of the factual dispute over the amount.

entirely, by DS.

As to the question of which state's governing law applies to these claims, DS contends: "Whether New York or New Jersey law applies to the claims between DS and Atalanta, the law appears substantially similar between both jurisdictions." (Pl.'s MSJ Br. 20 n.6.) AT's opposition brief does not address choice of law, but cites cases from all over the United States. DS, in reply, does not raise any choice of law objection to any of AT's cited cases. Because the parties have neither disputed the choice of law, nor argued that the choice of law makes a difference to the decision on this motion, this Court need not decide this question.

A. Waiver based on the $541K Payment

As to waiver based on the $541K Payment, there is no substantial factual dispute about the initial events: in the spring of 2014, AT placed certain cheese orders with GFI; GFI issued AT a *pro forma* invoice; and AT directly paid GFI roughly $541K[4] on this invoice. Paragraphs 193 through 200 in the parties' Rule 56.1 Statements raise disputes about characterizations of the basic facts, but no substantial disputes over the basic facts of these specific events that occurred in the spring of 2014. The parties do not dispute that GFI informed DS about these events in the summer of 2014, and do not dispute the resolution that DS and GFI reached about the situation, which was that DS agreed that the $541K Payment would be reflected in a series of credits to AT on GFI invoices that were then handled according to the customary course of business by all of the companies involved; AT paid DS the remaining balance due on these invoices using the procedure stated in the Notices.

AT argues: "An assignee's acquiescence to an account debtor's payments in

---

[4] The parties do dispute whether the payment was $541,200 or $541,000.

contravention of the assignee's initial payment instructions can wholly invalidate the prior assignment notice." (Def.'s Opp. Br. 18.) In support, AT cites Estate of Haas v. Metro-Goldwyn-Mayer, Inc., 617 F.2d 1136, 1138 (5th Cir. 1980). In reply, DS argues that Haas may be distinguished on the facts. The Court need not reach this debate over Haas because, regardless of Haas, DS has not contested the relevant legal principles, which are: 1) pursuant to U.C.C. § 1-103, common law principles of law and equity apply to the U.C.C.; 2) under New York law, waiver is a question of fact. AT contends that the way in which DS handled the $541K Payment constitutes a waiver. DS disagrees. A reasonable jury could agree with either side. There is a factual dispute here over the question of whether the way DS handled the $541K Payment constitutes a waiver of its rights under U.C.C. § 9-406(a).

In reply, DS also makes two other arguments. First, it contends that it has evidence that it *did* object to the 541K Payment. Second, it contends that acceptance of a single direct payment, amongst 75 proper payments, cannot be sufficient to show waiver as a matter of law. As to the contention that the waiver question here may be resolved as a matter of law, this is inconsistent with the teachings of the cases DS cited in its moving brief on the subject of waiver. In the moving brief's discussion of the law of waiver, DS relied heavily on King v. Tuxedo Enters., 975 F. Supp. 448, 454 (E.D.N.Y. 1997). King holds: "An assignee waives its rights if it fails to protest the account debtor's remittance of funds directly to the assignor," and cites in support another case DS relies on, General Motors Acceptance Corp. v. Clifton-Fine Central School Dist., 85 N.Y.2d 232, 235-36 (1995). Id. If DS has evidence that it protested the account debtor's remittance of the $521K Payment directly to the assignor, that may raise a triable factual question, pursuant to King, but it does not entitle DS to a judgment of no waiver as

6

a matter of law.

The discussion of the law of waiver in the moving brief cites two cases from the highest state Courts in New York and New Jersey.   First, DS quotes the New York Court of Appeals, which has a good summary of the law of waiver:

> Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned.   Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage.   However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection. Generally, the existence of an intent to forgo such a right is a question of fact.

Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P., 7 N.Y.3d 96, 104 (2006) (citations omitted).   Then DS cites the New Jersey Supreme Court in Knorr, another case with a good summary of the law of waiver:

> Waiver is the voluntary and intentional relinquishment of a known right.   An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights. The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference.   The party waiving a known right must do so clearly, unequivocally, and decisively.

Knorr v. Smeal, 178 N.J. 169, 177 (2003) (citations omitted).   Both Fundamental and Knorr show that these states' highest Courts understand waiver of a right to turn on a question of intent – a factual question.   DS has not persuaded this Court that it is entitled to judgment as a matter of law on the question of whether its handling of the $541K Payment did or did not manifest the requisite intent to waive.

DS also cites GM Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist., 85 N.Y.2d 232, 234 (1995), which holds: "If it can be established at trial that plaintiff had notice of the indirect payment to the assignor, plaintiff may have impliedly waived the direct payment requirement

under the assignment by permitting the account debtor to remit payment to the assignor over a substantial period of time." DS argues that, therefore, as a matter of law, a single payment cannot satisfy the requirement that it permitted AT to pay GFI directly over a substantial period of time. The problem for DS, however, is that the relevant facts are not so crisply in Plaintiff's favor. DS admits that, while AT made one $541K Payment to GFI, credit to AT for that payment was divided up between, and reflected in, twenty credits on twenty invoices that DS financed, starting on September 23, 2014, and ending on May 28, 2015. (Weiner Dec. Ex. MM.) This supports this Court's determination that waiver is a factual question for the jury, as there is much here for the jury to consider.

Based on the record before this Court, this Court finds that DS is not entitled to judgment as matter of law that its handling of the $541K Payment did not constitute a waiver of its rights under U.C.C. § 9-406(a). This Court concludes that this is a question of fact, that that AT has defeated the motion by pointing to evidence that supports its affirmative defense of waiver.

B. Waiver and Abandonment based on the Change

The parties agree that, on May 18, 2015, DS changed in writing the payment directions given to AT (the "Change.") (See Pl.'s 56.1 Stmt., Def.'s 56.1 Stmt, ¶¶ 86, 87.) The parties dispute much about the Change, and the Court here presents only a brief overview of the dispute, which suffices to demonstrate that material factual disputes require resolution at trial. In a nutshell, DS states: "Initially Atalanta paid into the account of Special, and then after May 18, 2015, Atalanta paid DS-Concept ITF LLC ('ITF'), after Factoring notified Atalanta in writing to make payment of Gourmet Invoices to a bank account in the name of ITF instead of Special." (Pl.'s MSJ Br. 10.) Thus, DS presents the Change as little more than an instruction to submit

payments to a different DS bank account.

AT has a very different and much more complex view of the Change, which, very briefly, is this: 1) certain DS and non-DS entities, including ITF, executed two agreements which changed legal ownership of GFI's relevant accounts receivable; 2) "DS and the Servicer thereafter directed Gourmet to alert its vendors, including Atalanta, that the instructions on the Notices should be disregarded and that payment on assigned invoices should be made to ITF" (Def.'s 56.1 Stmt, ¶ 84); 3) no new Notices of Assignment were issued; and 4) "Gourmet began issuing invoices to Atalanta directing it to pay ITF, which Atalanta did without objection from DS, the Servicer, Special Finance, or any DS-related entity."   (Id.)

AT explains the substance of the Change in directions as follows.   The original Notices of Assignment stated:

> These payment instructions can now only be altered or verified in writing solely by the servicer, DS-Concept Factoring, Inc. . . . You will receive invoices conforming to these payment instructions.   Even if our invoices direct payment elsewhere, you are responsible for following the payment instructions in this letter.

(Weiner Dec. Exs. A, B.)   The Notices of Assignment clearly state that the instructions can only be altered by the servicer in writing.   In the opposition brief, AT contends that DS did not follow these requirements; it did not properly instruct AT of a change in the payment instructions.[5]   AT points to an email, dated May 4, 2015, sent from factoring@ds-factoring.com

---

[5] This issue highlights some of the factual questions about what happened during the Change. DS contends: "DS-Concept's servicer, Factoring, notified Atalanta in writing of a change in the bank account that Atalanta should make payment to, directing Atalanta that it should now make payment to another DS-Concept entity bank account in ITF's name."   (Pl.'s 56.1 Stmt. ¶ 85.) In support, DS points to the email exchange of May 18, 2015, in which DS sent AT a GFI invoice for confirmation; while the GFI invoice states the new payment instructions, a reasonable jury could conclude that this email does not demonstrate that DS notified AT in writing that it

to various GFI employees, which states:

> Dear Kathy,
>
> Please be informed that we have a new bank account for all payments:
>
> [payment instructions for ITF]
>
> Please advise all your factoring clients to make all future payments on our new bank account !
>
> Please also change the text with our bank account you put on your invoices as follows:
>
> "The underlying account receivable of the invoice has been assigned to DS-Concept Trade Invest LLC and DS-Concept ITF LLC. Your liability remains in force until settlement of the invoice amount is received into the account of DS-Concept ITF LLC . . ."

(Newman Dec. Ex. 8.)   The evidence could reasonably be viewed as supporting the inference that the Change literally abandoned the instructions in the Notices of Assignment in two key ways: 1) it implemented an alteration to the payment instructions without the servicer notifying the account debtor in writing of the change to the payment instructions; 2) it abruptly replaced a clear rule that required the account debtor to ignore payment instructions on invoices with a procedure that can only be effective if the account debtor starts to follow payment instructions on invoices without having been instructed to do so, and despite having been instructed by the Notices *not* to do so.[6]   In the email dated May 18, 2015, in which DS transmits a GFI invoice to

---

had altered the payment instructions in the Notices.   (Bettex Dec. Ex. D.)   At the same time, DS points to AT's Answer to the Amended Complaint, in which AT states that, in the email of May 18, 2015, DS provided instructions which modified the instructions in the Notices of Assignment.   (Answer to Am. Compl. ¶¶ 235,236.)   It appears that these statements in the Answer may be contrary to AT's position in its opposition brief.   These are all issues for trial.

[6] A reasonable jury could hear all of the evidence and decide that a strict adherence to the old instructions would have precluded the new instructions from ever being followed, and the fact that DS contends that these were properly-issued new instructions, and that AT followed them,

AT for verification, the attached invoice #59097 bears the new payment instruction text which DS directed AT to place on invoices.   (Bettex Dec. Ex. D.)   There is no dispute that AT properly paid DS on invoice #59097.   (Pl.'s 56.1 Stmt. ℙ 88.)

The Court finds that a reasonable jury could view this evidence and find that, in May of 2015, DS abandoned and waived the Notices of Assignment.   As to the 11 Direct Payment invoices, factual disputes preclude a grant of Plaintiff's motion for summary judgment.

The Court notes that AT also presents a fragmentary additional argument:

A jury could find that DS has no rights over the Direct Pay Invoices, the Trade Financing, or the 2016 invoices at all. The Notices, combined with the emails Atalanta received from Gourmet informing it to pay Special Finance on those invoices it presented to DS for financing and about which DS contacted Atalanta, provided Atalanta with notice that DS only had rights to those invoices.

(Def.'s Br. 21.)   AT has not developed this argument sufficiently for the Court to address it.   It is also unclear whether AT argues that the re-assignment agreements themselves, which transferred the accounts receivable from Special Finance to ITF and then on to a third party, in some way nullified the Notices.

C.   The $541K Payment itself

DS also moves for summary judgment on Count Six as to the $541K Payment.   DS argues that the $541K Payment was a pre-payment on a cheese purchase, and that the $541K Payment should have been paid to DS, pursuant to U.C.C. § 9-406(a).   As already discussed, AT contends, in opposition, that DS waived its right to the $541K Payment, and this Court finds that, accordingly, factual disputes over the affirmative defense of waiver preclude a grant of summary

---

without objection from DS, supports a finding that the Notices were indeed abandoned and waived.

judgment as to the $541K Payment.

## II. Count Seven: the 2016 invoices

DS moves for summary judgment on Count Seven, seeking payment on three invoices issued by GFI to AT for cheese purchases in 2016, numbered by GFI as 5016RR, 5016R, and 50171 (collectively, the "2016 Invoices").   DS contends that it is entitled to judgment as a matter of law for the same reason it provided in regard to Count Six: pursuant to U.C.C. § 9-406(a), AT was obligated to pay the invoices as instructed in the Notices of Assignment.   As already discussed, AT contends, in opposition, that, having abandoned the Notices of Assignment, DS waived its rights under U.C.C. § 9-406(a) to payment of the 2016 invoices, and this Court finds that, accordingly, factual disputes over the affirmative defense of waiver preclude a grant of summary judgment as to the 2016 invoices.

AT makes two additional arguments in regard to the 2016 invoices.   First, it contends that DS and GFI terminated their factoring relationship as of September 15, 2015, citing a letter, dated April 5, 2016, from the CEO of GFI to the CEO of AT, which attests to this.   (Newman Dec. Ex. 13.)   This is sufficient to raise a factual dispute about whether DS is an assignee under U.C.C. § 9-406(a) with any right to payment of the 2016 invoices, and provides an additional ground to deny the motion for summary judgment as to the 2016 invoices.

Second, AT argues that any right that DS may have to payment on the 2016 invoices is subject to AT's right to recoup their value against the default judgment entered against GFI by this Court on June 5, 2018.   Having already found sufficient basis to deny the motion for summary judgment as to the 2016 invoices, the Court need not reach this argument.

### III. Counts One through Five: the "Unpaid Invoices"

DS moves for summary judgment on Counts One through Five, claims for breach of contract, estoppel, and account stated, seeking payment on a group of eleven invoices, which GFI numbered 59107-09, 59112-14, and 59117-21 (collectively, the "Unpaid Invoices.")   In brief, DS contends that it is entitled to payment on these invoices based on three theories: 1) as assignee of GFI, pursuant to U.C.C. § 9-406(a); 2) as obligee of an independent contractual obligation formed when AT verified the invoices, which gives rise to an estoppel; and 3) as obligee of an account stated, which DS appears to view as a form of either an express or implied-in-fact contract (see Pl.'s MSJ Br. 29.)

In opposition to the assignee theory, AT argues that DS cannot prove that the Unpaid Invoices are legitimate, and that AT has evidence that the goods that are the subject of these transactions were never delivered and/or were non-conforming.   AT cites U.C.C. § 9-404(a), which states:

> (a) [Assignee's rights subject to terms, claims, and defenses; exceptions.] Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
>
> (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract . . .

U.C.C. § 9-404.   AT contends that the right of DS, as assignee, to payment of the 11 Unpaid Invoices is subject to AT's defenses of no delivery and non-conforming goods.   As to the evidence of no delivery, for example,[7] AT cites the declaration of Thomas Gellert, President of

---

[7] Both parties to this motion offered substantial amounts of evidence that is probative of the issues of delivery, and the Court here offers only a single example to demonstrate the existence

AT, in which Gellert states that none of the product listed in these invoices was ever delivered to

AT.   (Gellert Dec. ⁋ 11.)   This alone is sufficient to raise a factual dispute about this issue.   As

to the goods being non-conforming,[8] AT cites the deposition testimony of the CEO of GFI,

Traian Jikovski, that: 1) the industry standard is that Pecorino cheese is made from 100% sheep's

milk (Newman Dec. Ex. 1 32:12-33:17); and 2) the Pecorino cheese GFI imported for these

transactions contained 3-4% cow's milk (Newman Dec. Ex. 1 324:11-327:15).   This is sufficient

to raise a factual question about whether the goods that GFI imported for AT were non-

conforming.

        Having determined that AT has raised a factual dispute over the defense of non-delivery

(as well as non-conforming goods), the Court inquires: under any of DS's three legal theories,

could a contract claim on a sale of goods be viable despite a jury determination of non-delivery?

Under what legal principle would a Court decide that a non-performing seller, in material breach,

can enforce a materially breached contract and require a buyer to pay?   Although this Court

does not foreclose the presentation of such an argument at trial, DS has not, at this point,

persuaded this Court that such a thing is possible.   DS concedes: "For sure, a seller is required to

---

of a factual dispute that requires resolution at trial.

[8] In reply, DS objects that AT's assertion of a non-conformity defense is untimely.   DS quotes
U.C.C. § 2-602(1), which states: "Rejection of goods must be within a reasonable time after their
delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."   This
provision does not protect DS if AT proves that the goods were never delivered or tendered.
Moreover, even if goods were delivered and accepted, U.C.C. § 2-717 allows a buyer who
accepted non-conforming goods to seek a set-off for damages for breach of contract.   See
Accent Commercial Furniture, Inc. v. P. Schneider & Assocs., 974 N.Y.S.2d 175, 176 (App. Div.
3rd Dept. 2013) ("A buyer must pay for accepted goods at the contract rate, but may eliminate or
diminish the amount claimed by a seller by asserting a valid counterclaim for breach of the sales
agreement.")

deliver conforming goods before payment is required by the buyer."   (Pl.'s Reply Br. 7.)

Nor does the estoppel theory offer DS a way around the delivery issue.   DS contends: "When an account debtor confirms to an assignee that it will pay an invoice, the account debtor undertakes an independent contractual obligation to make payment and is estopped from asserting any defenses."   (Pl.'s MSJ Br. 27.)   DS bases this on the theory that, when DS sent an invoice to AT for review, and AT confirmed the validity of the invoice to DS, AT undertook an independent obligation to make payment, and is thereafter estopped from asserting any defenses. This Court does not understand how a buyer's verification of a shipped but undelivered order would operate to preclude the buyer from refusing to pay in the event of non-delivery.

Nor does <u>Quantum</u>, the key case that DS offers in support of this theory, support it.   In <u>Quantum</u>, defendant was the general contractor of a construction project, and it engaged a subcontractor that assigned its accounts receivable to plaintiff.   <u>Quantum Corp. Funding v. L.P.G. Assocs.</u>, 667 N.Y.S.2d 702, 703 (App. Div. 1st Dept. 1998).

> Prior to the advancement of funds to [subcontractor], [plaintiff] notified [contractor] of each assignment and solicited its written guarantee that the work had been performed by [subcontractor], that the amount represented by the underlying invoice was therefore due and payable and that there was no set-off or claim against payment in excess of 20% of the invoice amount. Defendant [contractor] acknowledged and returned each estoppel certificate to plaintiff, which then advanced funds to [subcontractor].

<u>Id.</u>   Thus, in <u>Quantum</u>, defendant gave plaintiff an estoppel certificate and essentially guaranteed that the subcontractor's performance was complete and that the invoice was payable. This is quite different from the instant case.   AT's verification of the invoices to DS did not represent that the underlying invoice was due and payable, and AT did not provide an estoppel certificate.   The evidence of record supports the inference that AT may indeed have promised to

15

pay DS upon future delivery of conforming goods, but not upon non-delivery as well.

Rule 56(a) states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." This Court concludes that Plaintiff has not made the necessary showing. AT has demonstrated that there are material factual disputes requiring resolution at trial. Plaintiff's motion for summary judgment will be denied.

For these reasons,

**IT IS** on this 29th day of January, 2021,

**ORDERED** that Plaintiff's motion for summary judgment (Docket Entry No. 243) is **DENIED**.

_____s/ Stanley R. Chesler_____
Stanley R. Chesler, U.S.D.J

16